# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| TERRI K. FLY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 3:14-CV-1840 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court for review of the Commissioner of Social Security's decision denying Disability Insurance Benefits and Supplemental Security Income to Plaintiff, Terri K. Fly. For the reasons set forth below, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

BACKGROUND

On August 16, 2011, Plaintiff, Terri K. Fly ("Fly"), applied for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. section 401 *et seq*. On August 19, 2011, she also applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. section 1381 *et.*

*seq.*

Fly alleged her disability began on July 1, 2011. The Social Security Administration denied her initial applications and also denied her claims on reconsideration. On January 3, 2013, Fly appeared with her attorney and testified at an administrative hearing before Administrative Law Judge ("ALJ") Edward P. Studzinski ("Studzinski"). In addition, Leonard M. Fisher testified as a vocational expert ("VE"). On April 5, 2013, ALJ Studzinski issued a decision denying Fly's claims and finding that Fly had not been under a disability as defined in the Social Security Act.

Fly requested that the Appeals Council review the ALJ's decision, but the request was denied. Accordingly, the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 422.210(a)(2005). Fly has initiated the instant action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. section 405(g).

DISCUSSION

Fly was born on February 23, 1961, and was 50 years old on the alleged disability onset date. (Tr. 34). In the past, she has worked as both a Certified Nursing Aid ("CNA") and a home companion. (Tr. 22 and 219). Fly's alleged impairments include hypertension, bilateral knee osteoarthritis, obesity, and depression. (Tr. 15). Fly has a high school education. (Tr. 219). The medical evidence is largely undisputed and has been set forth in great detail in both

the ALJ's decision and the parties briefs. There is no reason to repeat it in detail here, although pertinent details are discussed below as needed.

Review of Commissioner's Decision

This Court has authority to review the Commissioner's decision to deny social security benefits. 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a decision." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In determining whether substantial evidence exists, the Court shall examine the record in its entirety, but shall not substitute its own opinion for the ALJ's by reconsidering the facts or re-weighing evidence. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). With that in mind, however, this Court reviews the ALJ's findings of law de novo and if the ALJ makes an error of law, the Court may reverse without regard to the volume of evidence in support of the factual findings. *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999).

As a threshold matter, for a claimant to be eligible for DIB or SSI under the Social Security Act, the claimant must establish that he is disabled. To qualify as being disabled, the claimant must be unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382(a)(1). To determine whether a claimant has satisfied this statutory definition, the ALJ performs a five step evaluation:

Step 1: Is the claimant performing substantial gainful activity: If yes, the claim is disallowed; if no, the inquiry proceeds to Step 2.

Step 2: Is the claimant's impairment or combination of impairments "severe" and expected to last at least twelve months? If not, the claim is disallowed; if yes, the inquiry proceeds to Step 3.

Step 3: Does the claimant have an impairment or combination of impairments that meets or equals the severity of an impairment in the SSA's Listing of Impairments, as described in 20 C.F.R. § 404, Subpt. P, App. 1? If yes, then claimant is automatically disabled; if not, then the inquiry proceeds to Step 4.

Step 4: Is the claimant able to perform his past relevant work? If yes, the claim is denied; if no, the inquiry proceeds to Step 5, where the burden of proof shifts to the Commissioner.

Step 5: Is the claimant able to perform any other work within his residual functional capacity in the national economy: If yes, the claim is denied; if no, the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v); *see also Herron v. Shalala*, 19 F.3d 329, 333 n. 8 (7th Cir. 1994).

In this case, the ALJ found that Fly was not engaged in substantial gainful activity even though she had worked continuously since her alleged onset date,. (Tr. 14-15). The ALJ also found that she suffered from multiple severe impairments. (Tr. 15). The ALJ

further found that Fly did not meet or medically equal one of the listed impairments. (Tr. 17). The ALJ then determined that Fly retained the physical residual functional capacity ("RFC") to:

> lift 20 pounds occasionally and 10 pounds frequently. The claimant can stand and/or walk for up to 4 hours in an 8-hour work period in 1-hour increments in positions that allow her the option to sit for at least 5 minutes every hour. The claimant can sit for 6 hours in an 8-hour work period; however, she can never climb ladders, ropes, or scaffolds, or kneel or crawl. Nevertheless, the claimant can occasionally climb ramps and stairs, and balance, stoop, and/or crouch.

(Tr. 17). Based on Fly's RFC, the ALJ found that Fly was capable of performing her past relevant work as a home companion. (Tr. 22). Thus, Fly's claim failed at step four of the evaluation process.

Fly believes that reversal is required because the ALJ's decision was not supported by substantial evidence. More specifically, Fly believes that the ALJ erred by: (1) improperly finding that Fly could perform her past relevant work as a home companion; (2) improperly assessing Fly's RFC; and (3) improperly assessing Fly's credibility.

ALJ's Finding that Fly Could Perform her Past Relevant Work

Fly worked as a CNA full time. She later worked part-time as a home companion three hours a day, three days a week. At the time of the hearing, she continued to work part-time as a home companion. The VE testified, based on the first hypothetical posed by the ALJ, that the hypothetical individual could perform the home companion or home

attendant job that Fly had performed previously. The ALJ ultimately adopted both the limitations set forth in the hypothetical posed to the VE and the VE's finding that Fly could perform her past home companion work. Fly contends that the ALJ erred by finding that she can perform her past relevant work as a home companion because she never performed the job of home companion at a level that equaled substantial gainful activity and it therefore does not qualify as past relevant work.

At the hearing, the ALJ opined that Fly's home companion work, based on her earning history, did not appear to reach the level of substantial gainful employment. (Tr. 37). The ALJ also noted in his decision that Fly had not engaged in substantial gainful activity since July 1, 2011. (Tr. 14).

Substantial gainful activity and gainful work activity are defined as follows:

> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. § 404.1572.

The regulations further provide that "[w]ork you have already

been able to do shows the kind of work that you may be expected to do. We consider that your work experience applies when it was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity." *See* 20 C.F.R. § 404.1565(a) and 20 C.F.R. § 416.965(a).

In *Lauer v. Bowen*, the claimant had worked part time as a loan processor prior to his alleged disability. *Lauer v. Bowen*, 818 F.2d 636, 639 (7th Cir. 1987). His claim, like Fly's, was denied at step four of the sequential evaluation process when the ALJ concluded that the claimant could perform his past relevant work as a loan processor. *Id.* at 637. On appeal, Lauer argued that this part-time job was not "past relevant work." The Seventh Circuit found that "'previous work', in order to be considered 'past relevant work,' must first be found to rise to the level of substantial gainful activity." *Id.* at 639.

The Commissioner appears to concede that, in order to qualify as "past relevant work," the previous work must constitute substantial gainful activity. However, the Commissioner argues that earning history is only one method of determining whether past work constitutes substantial gainful activity. While acknowledging that the ALJ made an explicit finding that the home companion job did not amount to substantial gainful activity, the Commissioner urges this Court to conclude that the finding at step one does not prevent the ALJ from finding that the very same work was substantial gainful

activity for another purpose. The Commissioner cites no cases to support this argument and has not explained how the part-time home companion work could meet the requirements of substantial gainful activity under any method of making that determination. This Court is not persuaded that the ALJ is free to find that work is substantial gainful activity for one purpose but not for another purpose. And, under *Chenery*, because the ALJ did not make this argument, the Commissioner is not free to argue at this stage that the home companion job was in fact substantial gainful activity. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93-95(1943); *Martinez v. Astrue*, 630 F.3d 693, 694 (7th Cir. 2011)("[I]n defiance of the principle of *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, 63 S.Ct 454, 87 L.Ed. 626 (1943), the Justice Department's lawyers who defend denials of disability benefits often rely heavily on evidence not (so far as appears) relied on by the administrative law judge, and defend the tactic by invoking an overbroad conception of harmless error.")(quoting *Spiva v. Astrue*, 628 F.3d 346 (7th Cir. 2010)).

The VE erred by characterizing Fly's past work as a home companion as past relevant work. The ALJ, despite finding that the home companion job did not constitute substantial gainful activity, nonetheless adopted this erroneous conclusion. Under *Lauer*, this error requires reversal. *See Lauer*, 818 F.2d at 641 (noting that the claimant may ultimately be found not disabled at step five based on ability to perform the very same prior non-substantial gainful

activity, but finding that the Court had a "duty to ensure that agency rules and regulations are properly promulgated, lawful and strictly enforced.").

The ALJ's Residual Functional Capacity Findings

Fly claims that the ALJ did not base his RFC finding on substantial evidence. SSR 96-8p provides that an "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. The Commissioner's decision cannot stand if it lacks either evidentiary support or an adequate discussion of the issues. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345 (7th Cir. 2005).

Fly is particularly critical of the ALJ's finding that she could stand and walk for up to four hours in an eight-hour day in one-hour increments provided that she be allowed to sit for five minutes every hour. (DE 16 at 9). Dr. Kelly, a treating physician, opined that Fly could occasionally lift and carry ten pounds, frequently lift and carry less than ten pounds, stand and walk for at least two hours in an eight-hour workday, and sit for less than six hours in an eight-hour day. (TR. 398-99). The ALJ rejected this opinion and Fly has not challenged that decision before this Court. (TR. 20). State agency medical consultants found that Fly could stand six hours in an

eight-hour day. (TR. 322, 343). The ALJ gave these opinions only partial weight, finding that Fly had greater limitations than the medical consultants found. (Tr. 21). There are no medical opinions stating that Fly could stand four hours in a work day if she has a five minute break each hour. When an ALJ rejects a limitation given by a physician, he is left with an evidentiary deficit. *See Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010). While the final RFC determination is, ultimately, a decision reserved to the Agency, the ALJ is not free to choose whatever limit he likes. An ALJ is not a doctor, and his limitations must find a basis in the evidence, whether medical or non-medical. *See* 20 C.F.R. 404.1527(e)(2); *Suide*, 371 Fed. Appx. at 689 (The ALJ is "not allowed to 'play doctor' by using her own lay opinions to fill evidentiary gaps in the record."). For example, if an ALJ finds a claimant credible, an RFC limitation can be based on the claimant's testimony regarding symptoms. *See* SSR 98-6p. And, an ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" in determining a claimant's RFC. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007); *see Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). But, it must nonetheless be clear to the reviewing court how the ALJ concluded that Fly could stand for up to four hours in an eight-hour day in one-hour increments provided that she be allowed to sit for five minutes every hour. The Commissioner notes that the ALJ indicated he included these additional

limitations to accommodate Fly's hearing testimony (TR. 21). The ALJ, however, rejected Fly's testimony regarding limitations in her ability to sit and stand, and the additional limitations imposed by the ALJ fall far short of accommodating Fly's testimony regarding her abilities.[1] As a result, the required "accurate and logical bridge from the evidence to [the ALJ's] conclusion" is missing. *See Suide v. Astrue*, 371 Fed. Appx. at 690 (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). *See also Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013)("No evidence supports this re-conclusion. No physician testified – no medical records [re]vealed – that [claimant] had the residual functional capacity ascribed to him by the administrative law judge."). While the ALJ was free to request additional medical opinions, he was not free to select an RFC

---

[1] The ALJ's "more restrictive" limits come nowhere close to accommodating Fly's testimony. She testified that she thought she could stand for about ten to 15 minutes and walk about 30 minutes before needing a break. (Tr. 45). Furthermore, following a discussion of the nature of Fly's work at the time of the hearing, when she was working three hours a day, three days a week, this exchange occurred:

> ALJ: Now what would stop you ma'am from doing say four hours a day, or say four days a week?
> Fly: My, once I get through doing, walking and doing the things that I need to do, I need help when I get home. My knees are very hurting and, and I'm not very, my mind is not focused right. And, from my pain all the time and I'm just not like I used to be.

(Tr. 38). Fly certainly did not testify that she could stand four hours a day so long as she had a five minute rest period each hour.

-11-

unsupported by the evidence, either medical or non-medical. *See Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000)(noting that the social security system is non-adversarial and ALJ's are required to summon a medical expert if necessary for them to make an informed decision.).

In this case, the precise amount of time that Fly can stand and/or walk will likely be determinative of her case, making the ALJ's failure to explain how he reached this precise limitation even more egregious. Fly is an individual closely approaching advanced age with a high school education and no transferable work skills. As a result, if the ALJ would have found Fly was limited to standing and walking for no more than two hours in an eight-hour day, she would have been found disabled. See 20 C.F.R. Part 404, Subpart P, Appendix 2, 201.12. Reversal is required.


The ALJ's Credibility Determination

Fly also claims the ALJ committed numerous errors in assessing her credibility. Having already determined that remand is necessary, this Court finds no compelling reason to address each of Fly's credibility arguments in detail and expresses no opinion with regard to most of them. There is one argument, however, that deserves some discussion.

The ALJ discredited Fly in part due to her lack of treatment and noncompliance with prescribed treatment, such as aqua therapy. Although the ALJ explicitly stated that he had no doubt Fly's non-

compliance was due to her financial situation, in finding Fly's testimony less than fully credible he noted "the complete lack of evidence suggesting that the claimant sought lower cost options or emergency room care." (Tr. 19).

The Commissioner concedes that the ALJ erred in referencing emergency room care. (DE 20 at 19 ("As Plaintiff notes, the ALJ apparently overstated the significance of her failure to pursue E/R treatment.")). On remand, the ALJ may not rely on a failure to seek emergency room care as a basis for doubting the seriousness of Fly's allegations. *See Hughes v. Astrue*, 705 F.3d 276, 278 (7th Cir. 2013)(noting that an ALJ critical of a claimant for failing to get care in a hospital emergency room "seemed unaware that emergency rooms charge for their services and are required to treat an indigent only if the indigent is experiencing a medical emergency."); *Goins v. Colvin*, 764 F.3d 677 (7th Cir. 2014) (similarly noting that hospitals charge very high prices, are "assiduous" in collecting fees, and are only required to treat indigents when they present with a medical emergency).

As for the ALJ's reliance on Fly's failure to pursue lower cost options, the ALJ should develop whether those options were available to Fly before faulting her for failing to avail herself of them. Before an ALJ can rely on a lack of medical treatment to find a claimant less than fully credible, he must first inquire into the reason for the lack of treatment. *See* SSR 96-7p. He must consider

legitimate reasons for a lack of treatment, including an inability to pay or a lack of access to free or low-cost medical services, before drawing a negative inference about a claimant's credibility. *See Brower v. Colvin*, No. 2:12-CV-193-PRC, 2013 WL 5259238 (N.D. Ind. Sept. 16, 2013). Ideally, when a claimant claims that they did not get more treatment because they could not afford it, an ALJ would follow up by inquiring whether they pursued low-cost options for treatment. This Court notes, however, that the Seventh Circuit Court of Appeals, in an unpublished opinion, suggested that this error may not warrant reversal where a claimant is represented by counsel and can be presumed to have put their best case forward. *See Buchholtz v. Barnhart*, 98 Fed. Appx. 540 (7th Cir. 2004). This Court need not decide whether the ALJ's failure to inquire into the availability of free or low-cost treatment requires remand because this case is being remanded for other reasons. On remand, this area should be developed.

Additional Proceedings are Necessary

Fly has requested that this Court remand this case for an award of benefits, or in the alternative, remand for additional proceedings. Additional proceedings are required here. This Court makes no findings regarding the merits of Fly's claims. On remand, the ALJ should consider all of the evidence in the record and, if necessary, give the parties the opportunity to expand the record so that the ALJ may build a logical bridge between the evidence and his conclusions.

CONCLUSION

For the reasons set forth above, the Commissioner of Social Security's final decision is **REVERSED** and this case is **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. section 405(g).

**DATED: August 31, 2015**  /s/RUDY LOZANO, Judge
United States District Court